IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| COMPASS AIRLINES, LLC | CV 12-105-H-CCL |
| Plaintiff, | |
| -v- | |
| MONTANA HUMAN RIGHTS BUREAU OF THE DEPARTMENT OF LABOR AND INDUSTRY, | ORDER |
| Defendant, | |
| and | |
| DUSTIN HANKINSON, | |
| Intervenor. | |

*******

Before the Court is Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, filed pursuant to Rule 65(b), Fed. R. Civ. P.  The motion is opposed by Defendant Montana Human Rights Bureau of the Department of Labor and Industry ("MHRB"), but the MHRB has not filed a written opposition to the motion.  Intervenor Dustin Hankinson ("Hankinson") has also not had an opportunity to state a position on the Motion, but the Court presumes that, as the

charging party in the MHRB action complained of by Plaintiff Compass Airlines, LLC ("Compass Airlines"), Intervenor Hankinson opposes the Motion for Temporary Restraining Order as well.

Pursuant to Rule 65(b)(1), Fed. R. Civ. P., the Court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

    (A)    specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

    (B)    the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

A temporary restraining order expires at the time set by the Court, not to exceed 14 days after entry.  Rule 65(b)(2).  When a court grants the temporary restraining order without notice, the hearing on the motion for a preliminary injunction must be expedited and set down at the earliest possible time.  Rule 65(b)(3), Fed. R. Civ. P.

When counsel for MHRB was notified orally of the motion for temporary restraining order, MHRB stated its opposition to the motion for temporary restraining order.  However, as to a proposed schedule going forward, counsel for

Compass Airlines and MHRB have agreed that a temporary restraining order would expire during the week between Christmas and New Year, and, in view of that fact, both counsel have agreed that the temporary restraining order should remain in place for an extended period until the preliminary injunction hearing can be held, some time after January 1, 2013.[*]

I.  Background.

This case arises from the October 4, 2011, denial of transportation on a commercial aircraft carrier by a flight attendant employed by Plaintiff Compass Airlines (operating Delta Connection flight 5820 from Missoula to Minneapolis/St. Paul).  The passenger who was denied boarding was an individual with a disability.  Mr. Dustin Hankinson was preparing to board the flight when a flight attendant stopped him because she thought he was bringing a prohibited Portable Oxygen Concentrator ("POC") onto the flight.  She was twice wrong, because a POC is permitted and because the device was a ventilator, not a POC. The flight attendant also stated that Mr. Hankinson was required to present a medical release for the flight, and there, too, she was wrong.  Before the aircraft left the jet bridge, however, a Delta Complaint Resolution Officer ("CRO")

---

[*] This stipulation is inconsistent with the Court's belief that such hearing should be expedited and held at the earliest possible moment, as scheduled later in this Order.

arrived at the gate (as is required by federal regulations whenever a disabled passenger is to be denied boarding), and the CRO was able to correct the flight attendant's multiple misunderstandings.  Mr. Hankinson was then told he could board the flight.  Mr. Hankinson declined to do so.  On the same day, Mr. Hankinson filed a complaint with the U.S. Department of Transportation, alleging a violation of the Air Carrier Access Act.

In response, Compass apologized by telephone and in writing to Mr. Hankinson and issued him and his traveling companion vouchers for a free flight. In addition, Compass Airlines immediately suspended all the crew members pending its investigation.  At the conclusion of that investigation, Compass terminated both of the flight attendants' employment and disciplined the pilot (temporary suspension without pay) for failing to intervene.  Compass Airlines then created a training video, quiz, and questionnaire to teach its employees how to recognize medical devices and how to interact respectfully with passengers with disabilities.  All Compass Airlines flight attendants have now completed this training and the training is currently being presented at annual pilot training classes.

In response to Mr. Hankinson's informal complaint, DOT investigated the incident and gave notice to the parties of its findings and conclusions.  DOT

issued a letter of warning to Compass Airlines.

Mr. Hankinson then filed a complaint with the MHRB alleging a violation of Montana's Human Rights Act based on the same incident.  Of some concern to Plaintiff Compass Airlines, Mr. Hankinson is a Montana Human Rights Commission Member, one of five individuals appointed by Montana's Governor to review of the decisions of the MHRB.

In 1986, the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41704(a), was enacted by Congress as an amendment to the Federal Aviation Act ("FAA"), 49 U.S.C. § 40103.  The ACAA prohibits discrimination against disabled individuals and requires the Secretary of the Department of Transportation to investigate any complaints by individuals of disability discrimination, to publish complaint data, to report annually on such complaints to Congress, and to implement a plan to provide technical assistance to airlines and individuals with disabilities in understanding the rights and responsibilities mandated by the ACAA.  The Department of Transportation has promulgated detailed and expansive regulations pursuant to its authority under the FAA and the ACAA.  Specifically, under 14 C.F.R. § 382.1-.159 ("Nondiscrimination on the basis of disability in air travel"), the Secretary has promulgated 159 regulations to carry out the ACAA.

Multiple federal regulations are relevant to the October 4, 2011 incident

5

wherein Mr. Hankinson was challenged during the boarding process.  One of the regulations specifically addresses electronic respiratory devices utilized by passengers during flights, and it states "you must permit any individual with a disability to use in the passenger cabin during air transportation, a ventilator, respirator, continuous positive airway pressure machine, or an FAA-approved portable oxygen concentrator (POC). . . ."  14 C.F.R. § 382.133.  Also, a carrier "must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation."  14 C.F.R. § 382.23(a).  However, a carrier "may require a medical certificate for a passenger with a disability–(i) who is traveling in a stretcher or incubator; [or] (ii) who needs medical oxygen during a flight. . . ."  14 C.F.R. § 382.23(b).  A carrier may actually refuse to provide transportation on the basis of disability under certain specified circumstances.  14 C.F.R. § 382.19.  If the carrier's actions are inconsistent with subpart B of the regulations ("Nondiscrimination and Access to Services and Information"), the carrier is made subject to an enforcement action pursuant to subpart K of the regulations. 14 C.F.R.  § 382.19(c)(4).

The initial phase of an enforcement action under the ACAA requires the carrier to respond in writing to a disability complaint within 30 days of its receipt, and the response must admit or deny whether the violation occurred.  14 C.F.R.

§ 382.155(d).  If the violation is admitted, the carrier must provide to the complainant a written statement of the facts and the steps to be taken by the carrier in response to the violation.  14 C.F.R. § 382.155(d)(1).  That statement must also "inform the complainant of his or her right to pursue DOT enforcement action under this part."  14 C.F.R. § 382.155(d)(3).  A formal complaint may be filed with the DOT to obtain a full evidentiary hearing, 14 C.F.R. § 382.159(b), and an adverse decision by the Secretary or the Administrator of the FAA may be appealed to the court of appeals where the complainant resides.  *See* 49 U.S.C. §46110.

## II.  <u>Legal Standard</u>.

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until the motion for preliminary injunction can be heard.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974).  The temporary restraining order can be granted without providing the opposing party an opportunity to be heard, "if specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Rule 65(b)(1), Fed. R. Civ. P.  The legal standard for granting a temporary restraining order is the

same as the legal standard for granting a preliminary injunction.  *See Stuhlbarg*

*Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir.

2001).

The party must demonstrate: (1) a likelihood of success on the merits; (2) a

likelihood of irreparable harm that would result if an injunction were not issued;

(3) the balance of equities tips in favor of the party; and (4) an injunction is in the

public interest.  *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 22, 129

S.Ct. 365, 376, 172 L.Ed.2d 249 (2008).

III.  Discussion.

Plaintiff clearly demonstrates a likelihood of success on the merits.  The

substantial regulations promulgated by the DOT regarding the use of electronic

respiratory devices by passengers of commercial air carriers is detailed,

unambiguous, and expansive.  *See Nondiscrimination on the Basis of Handicap in*

*Air Travel*, 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990) ("interested parties should be

on notice that there is a strong likelihood that state action on matters covered by

this rule will be regarded as preempted.").  Such pervasive regulation of a subject

area may well give rise to field preemption and federal jurisdiction to the

exclusion of state law claims.  Although the ACAA contains no express

preemption provision, Congress may express its intent to preempt state law by

implication through the structure and purpose of its law.  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 470 (9th Cir. 2007).  Implied preemption may be the result of either a direct conflict with a state law that stands as an obstacle to a federal law, or it may be the result of a field preemption.  "Implied preemption exists when federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.  Thus, field preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law."  *Id. (internal citations omitted).*

In a similar case to this one, *Foley v. Jetblue Airways*, 2011 WL 3359730 (N.D. Cal. 2011), plaintiffs alleged that the carrier violated California law by operating its website and airport check-in kiosks in a way that made them inaccessible to the visually impaired.  The DOT was actually already considering this question and had issued an interim regulation that carriers must not charge fees or make website discounts unavailable to passenger who are unable to make reservations using websites.  Another regulation required that passengers unable to use kiosks must be afforded equivalent service by assistance from personnel or being able to "come to the front of the line at the check-in counter."  *Foley v. Jetblue Airways*, *11.  The district court found that website and kiosk accessibility were pervasively regulated "so as to justify the inference that Congress intended to

exclude state law discrimination claims relating to these amenities. Access to airline websites and kiosks is a narrow field, and the DOT has issued regulations specifically addressing this field." *Id.* at *13. Thus, pervasive regulation of a narrow field makes reasonable "the inference that Congress left no room for the States to supplement it." *Id.* (citing *Bank of Am v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002), and quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)).

Similarly, in *Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007), the Ninth Circuit found field preemption of the warnings required to be given to passengers by the FAA. Plaintiffs claimed in *Montalvo* that the airlines were negligent in failing to warn them of the dangers of deep vein thrombosis. However, because the regulations comprehensively and pervasively addressed specific obligations to provide warnings for passenger safety–and not requiring the warnings demanded by plaintiffs–the Ninth Circuit affirmed on the basis that Congress had shown its intent to preempt state law in cases involving airline safety.

In this case, Compass Airlines asserts that regulations relating to electronic respiratory devices constitute a pervasive regulation of a very narrow field, tending to lead to the conclusion that Congress left no room for supplementation

by state law.  The Court is persuaded that the first prong is met, in that Compass Airlines shows a likelihood of success on the merits of its preemption argument.

The next prong is somewhat less convincing.  Plaintiff argues that it is at risk of immediate and irreparable harm if the MHRB is permitted to proceed with Mr. Hankinson's discrimination complaint.  True, Plaintiff is facing discovery requests and a deposition in the MHRB proceeding, and Mr. Hankinson has filed for a default judgment for Plaintiff's failure to file a prehearing statement.  It is true that the MHRB has stated that it intends to go forward absent an agreement between the parties to stay the MHRB case proceedings pending the outcome of this federal case.  Given the strength of the likelihood of Plaintiff's success and the fact that Plaintiff is currently facing a potential default judgment in the MHRB proceedings, however, the Court finds that Plaintiff has met the prong requiring it to show a likelihood of irreparable injury if the MHRB proceedings are not enjoined.  The threat is thus likely and immediate, and the harm of being forced to defend in a proceeding by administrative agency lacking jurisdiction over the matter may not be remedied by monetary damages.

The third prong, balance of the hardships, favors Plaintiff Compass Airlines. If a preliminary injunction is subsequently denied, Mr. Hankinson's position will be unchanged (despite a minor delay).  A default judgment against Plaintiff, on the

other hand, might present a serious hardship and a loss of the right not to have to defend.  The hardship thus tips in Plaintiff's favor.  *See also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (noting Hobson's choice of violating the state law or obeying the state law during pendency of state proceedings).

The fourth prong, the public interest analysis, causes the Court to focus on the public interest that the requirements of federal law not be violated and the Supremacy Clause preserved in a case of conflicting state and federal jurisdiction. *See Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-60 (9th Cir. 2009) (in a case finding preemption of local regulations by federal motor carrier transportation regulations and considering the public interest to be represented by "the Constitution's declaration that federal law is to be supreme").  Essentially, it is in the public interest to avoid constitutional violation.  It is also in the public interest to uphold the decisions of Congress.  *See, e.g., Am. Trucking Ass'n*, 559 F.3d at 1059-60 (balancing the public interest embodied in the local law "against the public interest represented in Congress' decision to deregulate the motor carrier industry....").

IV. Conclusion.

The Court concludes that Plaintiff has clearly demonstrated a likelihood of

12

success on the merits, a threat of imminent and irreparable harm, the balance of equities tipping in its favor, and a furtherance of the public interest, all in  support of the granting of a temporary restraining order.  Accordingly,

IT IS HEREBY ORDERED that Defendant Montana Human Rights Bureau is restrained from exercising jurisdiction in Dustin Hankinson's discrimination complaint and proceeding, Case No. 593-2013/0121015383.  That MHRB case shall be stayed pending this Court's decision of Plaintiff's motion for preliminary injunction and the question of federal preemption.

IT IS FURTHER ORDERED that an expedited hearing of Plaintiff's Motion for Preliminary Injunction is set down on Thursday, December 20, 2012, at 10:00 a.m., in Courtroom II, United States Courthouse, Helena.

IT IS FURTHER ORDERED that Defendant and Intervenor's opposition briefs shall be filed on or before Tuesday, December 18, 2012, at 5:00 p.m.

DONE and DATED this 13th day of December, 2012.


_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

13