IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

COMPASS AIRLINES, LLC                                CV 12-105-H-CCL

    Plaintiff,

-v-

MONTANA DEPARTMENT OF                         PRELIMINARY
LABOR AND INDUSTRY,                                  INJUNCTION
HEARINGS BUREAU,                                       ORDER

    Defendant,

and

DUSTIN HANKINSON,

    Intervenor.

*******

Before the Court is Plaintiff's Motion for Preliminary Injunction, filed

pursuant to Rule 65(b), Fed. R. Civ. P.  (Doc. 8.)  The motion is opposed by

Intervenor Dustin Hankinson, but unopposed by Defendant Montana Department

of Labor and Industry, Hearings Bureau ("ML&I"), which has filed a Notice of

non-appearance and non-opposition to the Motion for Temporary Restraining

Order and Preliminary Injunction.  (Doc. 20.)  The Motion for Preliminary

Injunction came on for hearing on December 20, 2012.  Compass Airlines was represented at the hearing by Christopher Mangan, Jeffrey Ellis, and David Hayes. Intervenor Hankinson was represented by Linda Deola and Brian Miller (on brief). Having considered the arguments of the parties, the Court is prepared to rule on the motion.

I.  Procedural Background.

    This case was filed by Compass Airlines on November 15, 2012, as an action for declaratory judgment pursuant to 28 U.S.C. § 2201, and the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.  On December 11, 2012, Plaintiff Compass Airlines filed a Motion for Temporary Restraining Order and Expedited Preliminary Injunction.  The Court granted the temporary restraining order on December 13, 2012, and set down an expedited hearing on the preliminary injunction motion that is now before the court.  Following the issuance of the temporary restraining order, the Defendant Montana Department of Labor & Industry (which is the umbrella agency of the Montana Human Rights Commission, Hearings Bureau, which was the original named Defendant) filed a notice of non-appearance and non-opposition to the issuance of either the temporary restraining order or the preliminary injunction.  However, Intervenor

Hankinson does object to the motion for preliminary injunction that is now before the Court.

II. Factual Background.

This case arises from the October 4, 2011, alleged denial of transportation on a commercial aircraft carrier by a flight attendant employed by Plaintiff Compass Airlines (operating Delta Connection flight 5820 from Missoula to Minneapolis/St. Paul). The passenger who was allegedly denied boarding was an individual with a disability. Mr. Dustin Hankinson was preparing to board the flight when a flight attendant stopped him because she thought he was bringing a prohibited Portable Oxygen Concentrator ("POC") onto the flight. She was twice wrong, because a POC is permitted and because the device was actually a ventilator, not a POC. The flight attendant also stated that Mr. Hankinson was required to present a medical release for the flight, and there, too, she was wrong. Before the aircraft left the jet bridge, however, a Delta Complaint Resolution Officer ("CRO") arrived at the gate (as is required by federal regulations whenever a disabled passenger is denied boarding), and the CRO was able to correct the flight attendant's multiple misunderstandings. Mr. Hankinson was then told he could board the flight. Mr. Hankinson was upset, and he declined to do so. On

the same day, Mr. Hankinson filed a complaint with the U.S. Department of

Transportation, alleging a violation of the Air Carrier Access Act ("ACAA"), 49

U.S.C. § 41705, and the implementing regulations promulgated by the U.S.

Department of Transportation ("DOT"), 14 C.F.R. Part 382.  The ACAA prohibits

air carriers from discriminating against passengers on the basis of disability, and

requires the Secretary of the Department of Transportation to investigate any

complaints by individuals of disability discrimination, to publish complaint data,

to report annually on such complaints to Congress, and to implement a plan to

provide technical assistance to airlines and individuals with disabilities in

understanding the rights and responsibilities mandated by the ACAA.

In response, Compass apologized by telephone and in writing to Mr.

Hankinson and issued him and his traveling companion vouchers for a free flight.

In addition, Compass Airlines immediately suspended all the crew members

pending its investigation.  At the conclusion of that investigation, Compass

terminated both of the flight attendants' employment and disciplined the pilot

(temporary suspension without pay) for failing to intervene.  Compass Airlines

then created a training video, quiz, and questionnaire to teach its employees how

to recognize medical devices and how to interact respectfully with passengers with

disabilities.  All 417 Compass Airlines flight attendants have now completed this

training, and the training is currently being presented at annual pilot training classes.

In response to Mr. Hankinson's informal complaint, DOT investigated the incident and gave notice to the parties of its findings and conclusions.  DOT issued a letter of warning to Compass Airlines.

Mr. Hankinson then filed a complaint with the Montana Human Rights Bureau ("MHRB") alleging a violation of the Montana Human Rights Act ("MHRA") based on the same incident.  Plaintiff notes that Mr. Hankinson is a Montana Human Rights Commission Member, one of five individuals appointed by Montana's Governor to review the decisions of the MHRB.

The DOT has promulgated detailed and expansive regulations pursuant to its authority under the Federal Aviation Act ("FAA"), 49 U.S.C. § 40103, and the ACAA.  Specifically, under 14 C.F.R. § 382.1-.159 ("Nondiscrimination on the basis of disability in air travel"), the Secretary has promulgated 159 regulations to carry out the ACAA.

Multiple federal regulations are relevant to the October 4, 2011 incident wherein Mr. Hankinson was challenged during the boarding process.  One of the regulations specifically addresses electronic respiratory devices utilized by passengers during flights, and it states "you must permit any individual with a

disability to use in the passenger cabin during air transportation, a ventilator, respirator, continuous positive airway pressure machine, or an FAA-approved portable oxygen concentrator (POC). . . ."  14 C.F.R. § 382.133.  Also, a carrier "must not require a passenger with a disability to have a medical certificate as a condition for being provided transportation."  14 C.F.R. § 382.23(a).  However, a carrier "may require a medical certificate for a passenger with a disability–(i) who is traveling in a stretcher or incubator; [or] (ii) who needs medical oxygen during a flight. . . ."  14 C.F.R. § 382.23(b).  A carrier may actually refuse to provide transportation on the basis of disability under certain specified circumstances.  14 C.F.R. § 382.19.  If the carrier's actions are inconsistent with subpart B of the regulations ("Nondiscrimination and Access to Services and Information"), the carrier is made subject to a DOT enforcement action pursuant to subpart K of the regulations. 14 C.F.R.  § 382.19(c)(4).

The initial phase of an enforcement action under the ACAA requires the carrier to respond in writing to a disability complaint within 30 days of its receipt, and the response must admit or deny whether the violation occurred.  14 C.F.R. § 382.155(d).  If the violation is admitted, the carrier must provide to the complainant a written statement of the facts and the steps to be taken by the carrier in response to the violation.  14 C.F.R. § 382.155(d)(1).  That statement must also

"inform the complainant of his or her right to pursue DOT enforcement action under this part." 14 C.F.R. § 382.155(d)(3). A formal complaint may be filed with the DOT to obtain a full evidentiary hearing, 14 C.F.R. § 382.159(b), and an adverse decision by the Secretary or the Administrator of the FAA may be appealed to the court of appeals where the complainant resides. *See* 49 U.S.C. §46110.

III. <u>Legal Standard</u>.

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011) (quoting *Winter v. Natural Resource Def. Council, Inc.*, 555 U.S. 7, 24-25 (2008)).

Generally, this is an action for declaratory judgment. "In a case of actual controversy within its jurisdiction . . .any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201(a).

The party seeking declaratory judgment must show an actual controversy regarding a matter within federal court subject matter jurisdiction. *See Calderon v. Ashmus*, 523 U.S. 740, 745, 118 S.Ct. 1694, 1698 (1998). A private party may seek declaratory and injunctive relief against state action on the basis of federal preemption where a federal right exists. *Bernhardt v. Los Angeles County*, 339 F.3d 920, 929 (9th Cir. 2003). Although the Declaratory Judgment Act creates a federal remedy, it does not provide an independent basis for federal jurisdiction. Subject matter jurisdiction must be founded upon parties of diverse citizenship or "arise under" federal law. In this case, the Complaint is between parties of diverse citizenship but founded upon federal law (the Air Carrier Access Act of 1986, as amended). In this case, Intervenor Hankinson apparently asserts that at least some of his underlying claims arise under the ACAA (*see* Doc. 15), and therefore it is clear that this action arises under federal law.[1] Plaintiff Compass Airlines seeks a declaratory judgment that the ACAA has completely preempted the field raised by Intervenor's underlying claims and has displaced all state law remedies that Intervenor could seek. If Plaintiff is correct (that the pertinent field raised by

---

[1] Intervenor Hankinson states that "All Dustin is arguing in his complaint [filed in the Montana Human Rights Bureau] is that Compass violated the ACAA in its treatment of him, and that such violation is actionable under the MHRA. Dustin will use the *federal* standard of care imposed by the ACAA and DOT." (Doc. 15 at 6-7.)

Intervenor's underlying claims is completely preempted by federal law), then the claims asserted by Intervenor must be treated as federal claims, even if pleaded in the underlying case as arising under state law.

IV.  Discussion.

The substantial regulations promulgated by the DOT regarding the use of electronic respiratory devices by passengers of commercial air carriers are detailed, unambiguous, and expansive.  *See Nondiscrimination on the Basis of Handicap in Air Travel*, 55 Fed. Reg. 8008, 8014 (Mar. 6, 1990) ("interested parties should be on notice that there is a strong likelihood that state action on matters covered by this rule will be regarded as preempted.").  Such pervasive regulation of a subject area may well give rise to field preemption and federal jurisdiction to the exclusion of state law claims.

Although the ACAA contains no express preemption provision, Congress may express its intent to preempt state law by implication through the structure and purpose of its law.  *See Martin ex rel. Heckman v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 809 (9th Cir. 2009) (addressing implied preemption of claims under pervasive regulations of Federal Aviation Act).  The Ninth Circuit has not addressed whether the ACAA impliedly preempts state law claims, but generally

district courts within the Ninth Circuit have so found when pervasive federal regulations govern the controversy.  *See Edick v. Allegiant Air, LLC*, 2012 WL 1463580 (D. Nev. Apr. 27, 2012); *Russell v. Skywest Airlines, Inc.*, 2010 WL 2867123 (N.D. Cal. July 20, 2010); *Johnson v. Northwest Airlines, Inc.*, 2010 WL 5564629 (N.D. Cal. May 5, 2010).

Implied preemption may be the result of either a direct conflict with a state law that stands as an obstacle to a federal law, or it may be the result of a field preemption.  "Implied preemption exists when federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.  Thus, field preemption occurs when Congress indicates in some manner an intent to occupy a given field to the exclusion of state law."  *Id.* (internal citations omitted).  In this case, Compass Airlines asserts that regulations relating to electronic respiratory devices constitute a pervasive regulation of a very narrow field, such that leads to the conclusion that Congress left no room for supplementation by state law.

Intervenor Hankinson argues that this case is like that of *Summers v. Delta Airlines, Inc.*, 805 F.Supp.2d 874 (N.D. Cal. April 4, 2011), and he promises that, relying on *Summers*, he will use the federal standard of care in pursuing his claim in state administrative proceedings under the MHRA.  Intervenor cites *Summers*

10

footnote 6 for the proposition that state law claims can co-exist with the ACAA as long as the state law claim uses the same standard of care as that required by federal law (the ACAA).  In this case, wherein the air carrier has already admitted violating ACAA regulations during the DOT civil enforcement proceeding, Intervenor's legal theory would permit him to take the *per se* violation and collect damages for it either in the state administrative proceeding or in state court.  The *Summers* case discusses this possibility in footnote 6, disapproving of the district court decision in *Gilstrap* that finds such state proceedings to be in conflict with the DOT civil enforcement proceeding and therefore preempted.  *See Gilstrap v. United Air Lines, Inc.*, No. 2:10-cv-06131-JHN-JCx (C.D. Cal. Jan. 21, 2011) (finding no private right of action under ACAA and finding state claims under ACAA preempted).

However, the *Summers* footnote 6 was dicta only.  The actual holdings of *Summers* were that (1) the airline passenger's negligence claim for failure to provide her assistance in deplaning was preempted by the ACAA, and (2) the airline passenger's negligence claim for failure to warn of and cure dangerous conditions was not preempted by the ACAA *because no federal regulation addressed this latter claim*.  In fact, the latter negligence claim had little or nothing to do with disability discrimination and was actually a typical tort

11

sounding in negligence and alleging severe physical injuries.  The most significant part of the first holding (the preempted ACAA claim) was that "Plaintiff's claims are preempted by the ACAA and cannot be amended to cure the deficiency." *Summers*, 805 F.Supp.2d at 887.

Bernice Summers, an 84-year-old woman who suffered numerous physical limitations, complained that Delta personnel did not provide her with a wheel chair or assistance in exiting the plane.  This claim, which was framed by the plaintiff as a state negligence claim, was found to be preempted by the ACAA due to the numerous and pervasive regulations governing the provision of assistance to passengers with disabilities.  As stated above, the *Summers* court ruled that such preempted claims "cannot be amended to cure the deficiency."  *Summers*, 805 F.Supp.2d at 887.  It is unsurprising that the *Summers* case never even discusses whether the plaintiff has a private right of action under the ACAA, because not only is Summers' first claim a state law claim, but all of her claims are alleged under various state laws in a federal diversity jurisdiction context.  Thus, the district court did not have an ACAA claim pending with which to consider an implied private right of action, although it seems significant that the district court would not permit the plaintiff to amend her state law claim to present it as an ACAA claim.

Factually, Summers' second claim arose when she encountered a gap between the plane's door and a raised platform, she tripped on the gap, and she fell onto the platform, seriously injuring her leg and hip so as to require surgery and weeks in the hospital.  No ACAA regulation (or any other regulation) applied to these allegations of negligence (failure to warn of or cure dangerous condition on premises).  Therefore, the *Summers* court found that this claim, which was clearly a state law negligence claim, was not preempted by the ACAA and was properly alleged pursuant to state law.

All courts agree that there is no express private right of action pursuant to the ACAA.  Although the question of an implied private right of action under the ACAA is not addressed in the *Summers* case, numerous courts in the Ninth Circuit have directly addressed whether an implied private right of action exists under the ACAA.  Recently, for example, in *Segalman v. Southwest Airlines*, 2012 WL 5289308 (E.D. Cal. Oct. 24, 2012), a district court of this circuit concluded that "it appears that Congress did not intend for the courts to find an implied private right of action; therefore, this Court declines to find a private right of action in the ACAA."  *Segalman*, slip op. at *5 (citing *Lopez v. Jet Blue Airways*, 662 F.3d 593 (2d Cir. 2011) (same); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263 (10th Cir. 2004) (same); *Love v. Delta Air Lines*, 310 F.3d 1347 (11th Cir. 2002) (same)); *but*

*see Shinault v. Am. Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991) (holding that ACAA allows damage remedies);  *Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 570 (8th Cir. 1989) (finding private right of action consistent with purposes of ACAA).

Significantly, after the *Shinault* and *Tallarico* cases were decided, Congress amended the ACAA in 2000 to add the DOT civil enforcement action provisions. These amendments have been interpreted by federal courts as an indicator that Congress did not intend a private right of action under the ACAA.   In addition, as *Segalman* noted, *after* the Fifth and Eighth Circuits found a private right of action under the ACAA, the Supreme Court in *Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001), "narrowed the authority of courts to find implied rights of action in statutes that do not expressly create a private cause of action. . . ." *Segalman*, slip op. at \*4.   Pre-amendment cases such as *Shinault* and *Tallarico*, must therefore also be read in the post-*Sandoval* context, which provided that "absent a showing of congressional intent, 'a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.'" *Segalman*, slip op. at \*5 (quoting *Sandoval*, 532 U.S. at 286-87).

When Congress added the DOT civil enforcement provisions to the ACAA,

14

it certainly gave no indication thereby that it intended to create a separate implied right of action.  There is a strong argument to be made that the opposite is true, and that a subsequent state claim premised upon violation of the ACAA regulation serves as an impediment and obstacle to the purposes of the DOT's enforcement action.  (Such was the basis of the finding of conflict preemption in *Gilstrap v. United Air Lines, Inc.*, 2011 WL 8318395, slip op. at *4  (C.D. Cal. Jan. 21, 2011) (quoting ERISA preemption case for proposition that conflict preemption applies when 'state-law cause of action . . . duplicates, supplements, or supplants the . . . civil enforcement remedy [and] conflicts with the clear congressional intent to make the . . . remedy exclusive and is therefore pre-empted.").)  This is especially true when the DOT enforcement action has obtained an admission of violation by the air carrier and has resulted in immediate retraining of the air carrier's personnel.  It is not hard to imagine that if such DOT enforcement actions were routinely followed by state cases charging the same violation, the adversarial element would be inserted into the process so that the DOT enforcement actions would no longer be resolved quickly, would not obtain admissions by air carriers, and would not result in the undertaking of immediate corrective measures by the air carriers.

During argument, counsel for Intervenor attempted to rescue Intervenor's

15

state claim under the MHRA by stating that there is still something that remains after the ACAA claims are set aside.  What remains is Intervenor's claim for emotional distress caused when the flight attendant denied him access to the aircraft due to the suspected POC, because she "had a hostile and demeaning attitude towards me, did not look at me while speaking to me, did not inquire about my health or safety, made no efforts to check with airlines to see if I required any clearance."  (Hankinson Charging Complaint to MHRB, Doc. 1-2 at 2, ¶ II.f.)  The Charging Complaint further explains that "at no time did the flight attendant or captain of the airplane come and inform me that I was welcome to board the plane.  At no time did any of the personnel who committed the discrimination express regret or acknowledge the discriminatory nature of their conduct."  (Hankinson Charging Complaint to MHRB, Doc. 1-2 at 3, ¶ Ik.)  This lack of concern and discriminatory intent is emphasized repeatedly by Intervenor's Charging Complaint, but in each instance, the actual discrimination identified by Intervenor is the violation of ACAA regulation.  Intervenor's complaint makes clear that all his allegations of emotional distress are all connected to and predicated upon the disability discrimination reflected in the violation of ACAA regulation.  Thus, any state claim of negligent infliction of emotional distress, as suggested by Intervenor's counsel at argument, would be a derivative claim

predicated upon the ACAA violation.   Such a derivative claim must also be

preempted along with the main ACAA claims, or else such an exception would

swallow the preemption whole.  Because Intervenor makes no factual allegation

that does not also arise out of the alleged violation of ACAA regulation, any state

law claim that he could present on these facts would be derivative of the central

ACAA disability discrimination claim, which is itself most likely preempted.

 Because this Court concludes both that Intervenor's state claims are

preempted by the pertinent, pervasive regulations of the ACAA and also that there

is no implied private right of action under the ACAA, Plaintiff Compass Airlines

has made a strong showing of success on the merits of its case. The Court is

persuaded that the first preliminary injunction factor is met because Compass

Airlines shows a likelihood of success on the merits of its preemption argument.

 In granting the temporary restraining order, the Court conceded that the next

prong is somewhat less convincing.  Plaintiff argues that it is at risk of immediate

and irreparable harm if the MHRB (or the Department of Labor & Industry,

Hearings Bureau) is permitted to proceed with Mr. Hankinson's discrimination

complaint.  Indeed, Plaintiff is facing discovery requests and a deposition in the

state administrative proceeding, in which Mr. Hankinson has filed for a default

judgment for Plaintiff's failure to file a prehearing statement.  Clearly the state

administrative proceedings will go forward absent an injunction in this case.

Given the strength of the likelihood of Plaintiff's success on the merits and the

fact that Plaintiff is currently facing a potential default judgment in the

administrative proceedings, the Court finds that Plaintiff has met the prong

requiring it to show a likelihood of irreparable injury if the state administrative

proceedings are not enjoined.  The threat is thus likely and immediate, and the

harm of being forced to defend in a proceeding by administrative agency lacking

jurisdiction over the matter may not be remedied by monetary damages.

The third prong, balance of the equities, favors Plaintiff Compass Airlines.

If the declaratory judgment sought by Plaintiff is subsequently denied, Mr.

Hankinson's position will be unchanged (after a minor delay).  Being required to

appear and defend a preempted federal claim in a state administrative proceedings,

however, might cause Plaintiff Compass Airlines to lose the protection of a federal

law to which it may be entitled.  The hardship thus tips in Plaintiff's favor.  *See*

*also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 112 S.Ct. 2031, 119

L.Ed.2d 157 (1992) (noting Hobson's choice of violating the state law or obeying

the state law during pendency of state proceedings).

The fourth prong, the public interest analysis, causes the Court to consider

the important governmental purpose of discouraging all forms of prohibited

18

discrimination under the Montana Human Rights Act.  This is a difficult case

because it is clear that Intervenor was distressed by the violation of federal

regulations and because there appears to be no compensatory scheme to address

his distress.  Nevertheless, the ultimate goal of Congress of discouraging disability

discrimination in commercial air transportation has been furthered by the

retraining of the Compass Airlines flight staff and pilots.  Additionally, the Court

must consider the public interest requirement that the rule of law not be violated

and the Supremacy Clause preserved in a case of conflicting state and federal

jurisdiction.  *See Am. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1059-

60 (9th Cir. 2009) (in a case finding preemption of local regulations by federal

motor carrier transportation regulations and considering the public interest to be

represented by "the Constitution's declaration that federal law is to be supreme").

Essentially, it is in the public interest to avoid constitutional violation.  It is also in

the public interest to uphold the decisions of Congress.  *See, e.g., Am. Trucking

Ass'n*, 559 F.3d at 1059-60 (balancing the public interest embodied in the local

law "against the public interest represented in Congress' decision to deregulate the

motor carrier industry....").  It is further in the public interest to uphold the

uniformity of federal law as it pertains to safety in air travel (the federal regulation

of personal electronic respiratory devices used by passengers being one narrow

19

aspect of safety in air travel) and to promote the purposes of the ACAA's civil enforcement scheme.

It appears likely that this Court will find ultimately that Intervenor Hankinson's complaint of disability discrimination pursuant to the MHRA is preempted by the ACAA and its regulations.  It is also likely that this Court will ultimately find that there is no implied private right of action for violations of the ACAA's regulations as to the utilization of electronic respiratory devices by passengers during flights.  Finally, it appears likely that this Court will find that none of Intervenor's state claims can survive the preemption.


IV.  Conclusion.

The Court concludes that Plaintiff has clearly demonstrated a likelihood of success on the merits, a threat of imminent and irreparable harm, the balance of equities tipping in its favor, and a furtherance of the public interest, all in  support of the granting of a preliminary injunction.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Motion for Expedited Preliminary Injunction (Doc. 8) is GRANTED.

IT IS FURTHER HEREBY ORDERED that within 20 days the parties shall convene an attorney conference for the purpose of proposing a schedule for final

disposition of the case.  The parties shall promptly thereafter submit a proposed schedule or notify the Court that a scheduling conference with the Court is required.

DONE and DATED this 27th day of December, 2012.


CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE